# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **YVETTE ROBERTS**, | Case No. 3:25-cv-01851-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| **CITY OF PORTLAND**, **PROSPER PORTLAND**, formerly known as Portland Development Commission, and **LEGACY EMANUEL HOSPITAL & HEALTH CENTER**, | |
| Defendants. | |

Yvette Roberts, P.O. Box 372, Beaverton, OR 97075. Pro se.

Elizabeth C. Woodard, City of Portland Office of the City Attorney, 1221 SW 4th Avenue, Suite 430, Portland, OR 97204. Attorney for Defendant City of Portland.

Clifford S. Davidson, Snell & Wilmer LLP, 601 SW 2nd Avenue, Suite 2000, Portland, OR 97204. Attorney for Defendant Prosper Portland.

Kevin R. Schock, David Ryan Mets & Misha Isaak, Stoel Rives LLP, 760 SW 9th Avenue, Suite 3000, Portland, OR 97205. Attorneys for Defendant Legacy Emanuel Hospital & Health Center.

**IMMERGUT, District Judge.**

Before this Court are various motions by the parties: (1) Defendant Prosper Portland's

Motion to Dismiss ("Prosper Portland MTD"), ECF 9; (2) Prosper Portland's Request for

PAGE 1 – OPINION & ORDER GRANTING MOTION TO DISMISS

Judicial Notice, ECF 11; (3) Plaintiff Yvette Roberts's Motion for Appointment of Counsel, ECF 12; (4) Defendant Legacy Emanuel Hospital & Health Center's Motion to Dismiss and Motion for Summary Judgment ("Legacy Emanuel MTD & MSJ"), ECF 24; and (5) Defendant City of Portland's Motion for Joinder ("Motion for Joinder"), ECF 29.[1] For the reasons below, this Court grants in part Prosper Portland's motion to dismiss and grants in part Legacy Emanuel's motion to dismiss, both with respect to Roberts's federal law claim for conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985. On the face of the Complaint, ECF 1, Roberts's Section 1985 claim is untimely, and thus Roberts fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). This Court declines to exercise supplemental jurisdiction over Roberts's two remaining state law claims and therefore denies as moot the remainder of Prosper Portland's motion to dismiss and Legacy Emanuel's motion to dismiss and motion for summary judgment.[2]

## BACKGROUND

In her Complaint, and as the entire basis for her claims, Roberts attaches the complaint from another case in this district: *Emanuel Displaced Persons Association 2* ("*EDPA2*") *v. City of Portland*, case no. 22-cv-01896-SI. *See* Complaint, ECF 1 at 1. Roberts alleges that she "raises the same claims and arguments [as] in that case," and therefore, she "now seek[s] to assert the same claims." *Id.* Because the complaints in the two cases are identical except for minor revisions, this Court provides the following summary of the allegations in the Complaint from

---

[1] The City of Portland moves to join in Prosper Portland's MTD, ECF 9; Prosper Portland's Request for Judicial Notice, ECF 11; and Legacy Emanuel's MTD & MSJ, ECF 24. Motion for Joinder, ECF 29 at 1–2. Roberts does not oppose the Motion for Joinder. Plaintiff's Response to Motion for Joinder, ECF 41 at 1. This Court therefore grants the City's Motion for Joinder.

[2] This Court finds that the Motions are suitable for decision without oral argument. L.R. 7-1(d)(1); *see Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

PAGE 2 – OPINION & ORDER GRANTING MOTION TO DISMISS

Judge Simon's opinion in *EDPA2* and for purposes of these motions, accepts that the allegations apply to Plaintiff Roberts:

> Beginning in the late 1950s and continuing into the early 1970s, the City [of Portland], Prosper [Portland], and [Legacy] Emanuel allegedly acted in concert to destroy a predominately Black community and displace hundreds of families from their homes and businesses in the Central Albina neighborhood in Portland, Oregon. The destruction and displacement were done in the name of urban renewal, progress, and the removal of blight. Yet for decades, much of the demolished and cleared land languished empty and unused, creating real blight. This vacant land serves as a constant reminder to the survivors and descendants of those displaced families of what they once had, what their families could have had for generations, and what was taken from them. For the Individual Plaintiffs, the loss of their family homes has meant the deprivation of inheritance and the loss of intergenerational wealth, community, and opportunities.
>
> Plaintiffs contend that recently discovered information, concealed by Defendants, shows that urban renewal and blight were mere pretexts for Defendants' real motive—a desire to remove Black people from the economically valuable neighborhood of Central Albina. According to Plaintiffs, the City [of Portland], [Prosper Portland], and [Legacy] Emanuel profited from their actions and, rather than removing blight, created a public nuisance that continues to cause harm. As alleged by Plaintiffs, Defendants conspired to destroy the Central Albina neighborhood and displace Plaintiffs' families and implemented Defendants' conspiracy in two phases. Phase One, which took place from the late 1950s until the late 1960s, involved [Legacy] Emanuel, acting with the secret approval of the City [of Portland] and [Prosper Portland], allegedly intimidating many people into selling their homes, which were then destroyed. According to Plaintiffs, [Legacy] Emanuel bought approximately 100 homes in the area around the hospital and then either demolished those homes or intentionally left them vacant.
>
> Phase Two, which took place from the late 1960s until 1973, involved the City [of Portland] and [Prosper Portland] allegedly coming "out of the shadows" and publicly engaging in the narrative that Central Albina was "blighted" because of the presence of so many demolished or vacant homes. The City [of Portland] and [Prosper Portland] then took possession of the remaining homes still occupied and the remaining businesses in the community through an allegedly unlawful use of urban renewal and eminent domain. According to Plaintiffs, it was not until early 2021 that they learned that, as part of Defendants' alleged conspiracy to deprive the Individual Plaintiffs of their civil rights, the City had secretly agreed to reimburse Emanuel for the cost of the Phase One purchases and demolitions. Plaintiffs also allege that Emanuel received back, in the form of tax credits granted by the City, every dollar spent in buying and demolishing the approximately 100 homes taken during Phase One.

*EDPA2 v. City of Portland*, 704 F. Supp. 3d 1088, 1098–99 (D. Or. 2023).

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a plaintiff's claim based on "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts must "accept as true all well-pleaded allegations of material fact," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010), and "examine the allegations of the complaint as a whole." *Khachatryan v. Blinken*, 4 F.4th 841, 854 (9th Cir. 2021). Courts need not, however, credit legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. A Rule 12(b)(1) jurisdictional challenge may be either "facial" or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Facial attacks require the court to assume all allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A factual attack, by contrast, "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court may review evidence beyond the complaint. *Id.*

Plaintiff is self-represented, so this Court will construe the pleadings in her favor and afford her the benefit of any doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). But this Court may not supply essential elements of a claim that are not pled. *Pena v. Gardner*, 976 F.2d 469, 471–72 (9th Cir. 1992) (per curiam).

PAGE 4 – OPINION & ORDER GRANTING MOTION TO DISMISS

**DISCUSSION**

## A. Requests for Judicial Notice

As an initial matter, Prosper Portland requests that the Court take judicial notice of (1) the complaint in *EDPA2* and (2) various "[p]ress reports surrounding the filing of" the *EDPA2* action. Request for Judicial Notice, ECF 11 at 1–2. Legacy Emanuel similarly requests that the Court take judicial notice of the *EDPA2* docket. Legacy Emanuel MTD & MSJ, ECF 24 at 10 n.3. Federal Rule of Evidence 201 allows courts to take judicial notice of facts "not subject to reasonable dispute." Fed. R. Ev. 201(b). Courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). "But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

This Court takes judicial notice of the requested filings on the *EDPA2* docket because "court filings" are properly subject to judicial notice. *Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6. However, this Court does not take judicial notice of any "disputed facts contained in" these filings. *Khoja*, 899 F.3d at 999. As to press reports of the *EDPA2* litigation, this Court declines to take judicial notice of the press reports because such reports are unnecessary to this Court's resolution of Defendants' motions to dismiss Roberts's Section 1985 claim. *See infra* Section C.

## B. Standing

Prosper Portland next challenges whether Roberts has established constitutional standing. Prosper Portland, ECF 9 at 3–4. "Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). "To satisfy the 'Cases' and 'Controversies' requirement, a plaintiff must have standing to sue." *American Encore v. Fontes*, 152 F.4th 1097, 1109–10. To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an

PAGE 5 – OPINION & ORDER GRANTING MOTION TO DISMISS

injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested relief." *Id.* at 1110 (quoting *All. for Hippocratic Med.*, 602 U.S. at 380). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). However, a plaintiff "need only establish each element of standing with the manner and degree of evidence required at the successive stages of the litigation." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 835 (9th Cir. 2023) (citation modified). "Thus, at the pleadings stage, the plaintiff must allege sufficient facts that, taken as true, demonstrate each element of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (citation modified).

"The 'first and foremost of standing's three elements,' and the only element at issue here, is that the plaintiff has suffered 'an injury in fact.'" *Meland v. WEBER*, 2 F.4th 838, 844 (9th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 378 U.S. 330, 338–39 (2016)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 378 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340. "An injury is 'particularized' when it impacts a plaintiff in a 'personal and individual way.'" *Lake v. Fontes*, 83 F.4th 1199, 1203 (9th Cir. 2023) (quoting *Spokeo*, 578 U.S. at 339). "An interest shared generally with the public at large in the proper application of the Constitution and laws will not do." *Id.* (citation modified).

Prosper Portland argues that Roberts "does not clearly allege facts demonstrating that *she* has suffered any concrete injury fairly traceable to Prosper Portland." Prosper Portland MTD, ECF 9 at 4 (emphasis in original). Although Prosper Portland is correct that Roberts does little more than attach the complaint from the *EDPA2* case in which she was not a party, it is clear

PAGE 6 – OPINION & ORDER GRANTING MOTION TO DISMISS

from her complaint that she alleges the same facts that the plaintiffs in *EDPA2* alleged in that case. *See, e.g.*, Complaint, ECF 1 at 1 ("The present filing raises the same claims and arguments as in that case."); *id.* at 5 (asserting that Roberts is a "descendant[] of those whose homes were taken and demolished in Central Albina and whose thriving and supportive community was fragmented by the never-fully-consummated Emanuel Hospital Urban Renewal Project.").

This Court therefore finds persuasive Judge Simon's Article III standing analysis for the individual plaintiffs in *EDPA2, see* 704 F. Supp. 3d at 1099–1101, and likewise concludes that Roberts has adequately established standing at the pleadings stage.[3] As Judge Simon explained, the Complaint alleges that the plaintiffs in that case "personally suffered injury caused by the fracturing of their families, the loss of their community and sense of security, and a loss of past and future economic opportunities, including intergenerational wealth." *Id.* at 1100. This Court agrees that these alleged harms plausibly constitute "concrete and particularized injuries specific and personal to" Roberts based on her adoption of the same factual allegations as the Plaintiffs in *EDPA2*. *Id.* In addition, although Prosper Portland does not challenge the second and third requirements for standing, this Court adopts Judge Simon's analysis in *EDPA2* and concludes that Roberts has adequately alleged causation and redressability. *See id.* at 1100–01. Therefore,

---

[3] In the Complaint, Roberts states that in addition to bringing claims on her own behalf, she brings claims on behalf of individuals "under Emanuel Displaced Persons Association 3, LLC (EDPA3)." Complaint, ECF 1 at 1. However, in response to Prosper Portland's motion to dismiss, Roberts acknowledges that her "claims fail . . . on behalf of EDPA3." Roberts's Response to Prosper Portland's MTD, ECF 31 at 4–5; *see* Prosper Portland MTD, ECF 9 at 6–7 (arguing for dismissal of "the Complaint to the extent it purports to be filed on behalf of anyone but Ms. Roberts"). Therefore, to the extent Roberts raises claims on behalf of individuals that are not parties to this action, this Court dismisses all claims without prejudice to those individuals.

Plaintiff has plausibly pled standing at the pleadings stage, and this Court proceeds to the merits.[4]

### C.  Federal Law Claim

In her first claim for relief, Roberts alleges that Defendants conspired to violate her civil rights under 42 U.S.C. § 1985. Complaint, ECF 1 ¶¶ 82–87. "A plaintiff alleging a conspiracy under § 1985(3) must establish: the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance of the conspiracy; and a resulting injury." *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). Defendants do not claim that Robert has failed to allege any elements of her Section 1985 claim. Rather, Prosper Portland and Legacy Emanuel both move to dismiss with prejudice the Section 1985 claim on the grounds that it is time-barred. Prosper Portland MTD, ECF 9 at 5–6; Legacy Emanuel MTD & MSJ, ECF 24 at 13–17. This Court agrees with Defendants that on the face of the Complaint, Roberts's Section 1985 claim is untimely and that no amendment to the Complaint would lead to the claim being timely.

"Claims brought under § 1985 are subject to the same statute of limitations applicable to personal injuries brought under state law." *EDPA2*, 704 F. Supp. 3d at 1103 (citing *McDougal v. County of Imperial*, 942 F.2d 668, 673–74 (9th Cir. 1991)). And "[i]n Oregon, the statute of

---

[4] Unlike in *EDPA2*, Legacy Emanuel raises in its motion for summary judgment, brought in the alternative to its motion to dismiss, a *factual* dispute regarding whether Roberts is indeed a descendant of a homeowner in the Central Albina neighborhood. Legacy Emanuel MTD & MSJ, ECF 24 at 6; *id.* at 29 ("[T]he record evidence supports that Roberts' family in fact did not own a home in Central Albina and therefore cannot claim that Emanuel Hospital deprived her of any inheritance."). However, because this Court does not reach Legacy Emanuel's motion for summary judgment, this Court does not assess whether the record evidence demonstrates a genuine dispute of material fact as to whether Roberts is a descendant of a Central Albina homeowner. Rather, this Court takes the Complaint at its word that Roberts is a "descendant[] of those whose homes were taken and demolished in Central Albina." Complaint, ECF 1 at 5.

limitations for personal injury lawsuits is two years." *Id.* (citing Or. Rev. Stat. § 12.110(1)). Therefore, a two-year statute of limitations applies to Roberts's Section 1985 claim.

When applying a state's statute of limitations, "[f]ederal courts also apply a forum state's law regarding tolling, including equitable tolling when not inconsistent with federal law." *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). "Under Oregon law, the running of a statute of limitations may be tolled when the party being sued 'fraudulently conceals' the wrongful conduct at issue from the injured party." *EDPA2*, 704 F. Supp. 3d at 1104 (quoting *MAT, Inc. v. Am. Tower Asset Sub, LLC*, 312 Or. App. 7, 15 (2021)). More precisely, "one who wrongfully conceals material facts and thereby prevents discovery of his wrong or of the fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him . . . until the expiration of the full statutory period from the time when the facts were discovered or should, with reasonable diligence, have been discovered." *Id.* at 1105 (quoting *Mat, Inc.*, 312 Or. App. at 15).

While state law governs the statute of limitations and equitable tolling, "federal, not state, law determines when a federal cause of action accrues." *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012). In the Ninth Circuit, a claim accrues "when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'" *Id.* (quoting *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1050 (9th Cir. 2008)). "[D]ismissal based on an affirmative defense," such as a statute of limitations defense, "is permitted when *the complaint* establishes the defense." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (emphasis in original).

Here, the Complaint establishes that Roberts's Section 1985 claim is untimely, even when assuming the delayed accrual of her claim and the application of equitable tolling. Roberts

PAGE 9 – OPINION & ORDER GRANTING MOTION TO DISMISS

filed her Complaint on October 9, 2025. Complaint, ECF 1. Therefore, under the applicable two-year statute of limitations, in order for the claim to be timely, it must have accrued on or after October 9, 2023, or it must have been equitably tolled until at least October 9, 2023. But the allegations of the Complaint plainly establish that Roberts's claim accrued at the latest on February 14, 2022, and that equitable tolling applied only until February 14, 2022, at the latest.

First, as to accrual, the question is when Roberts "knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury." *Bonneau*, 666 F.3d at 581 (citation modified). The Complaint makes clear that Roberts knew, or at the very least should have known, of her injury and the cause of that injury, at the latest on February 14, 2022, the date Portland State University "issued a groundbreaking report about [Legacy] Emanuel's displacement of Black families from Central Albina." Complaint, ECF 1 ¶ 79. As Roberts alleges, the report "document[ed] the wide-ranging impacts that racist planning and urban renewal practices have had on Portland's Black community, with a focus on those forced out of Central Albina." *Id.* Roberts further concedes that the report "reveal[ed] some of the contours of the conspiracy between defendants in this case—a conspiracy concealed for decades by those same defendants." *Id.* ¶ 80. Specifically, the report "ma[de] clear that 'blight' did not animate this conspiracy; rather, it was defendants' desire to remove these Black plaintiffs and their families from this economically desirable neighborhood in N/NE Portland." *Id.* In short, based on the allegations in her own Complaint, Roberts should have reasonably known of her alleged Section 1985 "injury and the cause," at the latest, from the date that Portland State University issued the report. *Bonneau*, 666 F.3d at 581 (citation modified).

Second and similarly, as to equitable tolling, Roberts's Section 1985 claim was no longer subject to equitable tolling based on fraudulent concealment after the issuance of the Portland

PAGE 10 – OPINION & ORDER GRANTING MOTION TO DISMISS

State University report. *EDPA2*, 704 F. Supp. 3d at 1104 (quoting *MAT, Inc. v. Am. Tower Asset Sub, LLC*, 312 Or. App. 7, 15 (2021)). Fraudulent concealment equitably tolls the running of the statute of the limitation until "the time when the facts [of a cause of action] were discovered or should, with reasonable diligence, have been discovered." *EDPA2*, 704 F. Supp. 3d at 1105 (quoting *Mat, Inc.*, 312 Or. App. at 15). There is a real question whether equitable tolling even applies to toll Roberts's claim since the 1960s and 70s. Nevertheless, even assuming Roberts's claim was equitably tolled for decades until the publication of the report on February 14, 2022, there is no basis to equitably toll the running of the two-year statute of limitations after that date. The same allegations in the Complaint discussed above with respect to accrual demonstrate that Roberts "discovered or should, with reasonable diligence, have . . . discovered" the facts that form the basis of her Section 1985 claim when the report was published. *Mat, Inc.*, 312 Or. App. at 15.

In sum, because Roberts's Section 1985 claim accrued at the latest on February 14, 2022, and equitable tolling does not apply to her claim after that date, the two-year statute of limitations bars Roberts's claim. Moreover, "any amendment would be an exercise in futility" because Roberts cannot plead around the fact that she should have known, exercising reasonable diligence, of the facts underlying the alleged Section 1985 violation after February 14, 2022, even if she did not actually know of them until a later date. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation modified); *see* Roberts's Response to Prosper Portland MTD, ECF 31 at 4 (arguing that equitable tolling should apply until July 5, 2025, when the City of Portland "made a public confession" at a public hearing as to the conduct at issue in this case). Therefore, this Court dismisses the Section 1985 claim without leave to amend. *See, e.g.*, *Novak*, 795 F.3d at 1020 ("Futility alone can justify a court's refusal to grant leave to amend.").

PAGE 11 – OPINION & ORDER GRANTING MOTION TO DISMISS

### D. State Law Claims

Roberts also brings two state law claims for unjust enrichment and nuisance. Complaint, ECF 1 ¶¶ 88–97. However, having dismissed the one federal law claim in this case, this Court declines to exercise supplemental jurisdiction over the state law claims. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))). This Court also concludes that "the balance of factors to be considered" of "judicial economy, convenience, fairness, and comity . . . point toward declining to exercise jurisdiction over the remaining state-law claims." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008). At this early stage of litigation, judicial economy and convenience are served by not adjudicating Roberts's state law claims. Furthermore, dismissal promotes fairness and comity by allowing Oregon's courts to resolve matters of state law.

### E. Appointment of Counsel

Finally, this Court denies Roberts's Motion for Appointment of Pro Bono Counsel, ECF 12, because Roberts has not demonstrated "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citation modified). "Generally, a person has no right counsel in civil actions." *Id.* "However, a court may under exceptional circumstances appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)." *Id.* (citation modified). To determine whether exceptional circumstances exist, courts consider "the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* (quoting *Weyngandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). "Neither of these considerations is dispositive and instead must be viewed together." *Id.*

Both considerations weigh against finding exceptional circumstances in this case. First, as to Roberts's likelihood of success on her federal law claim under 42 U.S.C. § 1985, this Court has determined that the claim is barred by the statute of limitations. Therefore, Roberts is not only unlikely to succeed but also has not succeeded with respect to her federal law claim. With respect to Roberts's state law claims, this Court declines to exercise supplemental jurisdiction over these claims, and thus these claims are not relevant to Roberts's entitlement to appointment of counsel. Second, as to Roberts's ability to articulate her legal claims, although Roberts would benefit from counsel's assistance, she has demonstrated an ability "to articulate [her] claims *pro se* in light of the complexity of legal issues involved" through her responses to Defendants' various motions. *Id.* (quoting *Weyngandt*, 718 F.2d at 954). In any event, appointment of counsel is more appropriately reserved for any state court that ultimately adjudicates her state law claims.

## CONCLUSION

For the above reasons, this Court GRANTS IN PART Prosper Portland's Motion to Dismiss, ECF 9, and GRANTS IN PART Legacy Emanuel's Motion to Dismiss and Motion for Summary Judgment, ECF 24. Roberts's first claim for relief under 42 U.S.C. § 1985 is DISMISSED WITH PREJUDICE. This Court DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION over Roberts's two state law claims for unjust enrichment and nuisance and therefore DENIES AS MOOT the remainder of Prosper Portland's Motion to Dismiss, ECF 9, and Legacy Emanuel's Motion to Dismiss and Motion for Summary Judgment, ECF 24. Roberts's second and third claims for relief are DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

DATED this 22nd day of June, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 14 – OPINION & ORDER GRANTING MOTION TO DISMISS